AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>NIVEA ALTIDOR,<br><br>_____<br>*Defendant(s)* | )<br>)<br>)  Case No. 17-6075-SNOW<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __November 3, 2014__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1001(a); | False Statement to a Federal Agency |
| Title 18, United States Code, Section 1015(a); | False Statement in Naturalization Application |
| Title 18, United States Code, Section 1425(b). | Procurement of Citizenship or Naturalization Unlawfully |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

CBP OFCR. NARCISO FERNANDEZ
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/24/17

_____
*Judge's signature*

City and state: Fort Lauderdale, FL

HON. LURANA S. SNOW, U.S. Magistrate Judge
*Printed name and title*

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. 17-6075-SNOW |
| NIVEA ALTIDOR, | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __November 3, 2014__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1001(a); | False Statement to a Federal Agency |
| Title 18, United States Code, Section 1015(a); | False Statement in Naturalization Application |
| Title 18, United States Code, Section 1425(b). | Procurement of Citizenship or Naturalization Unlawfully |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
Complainant's signature

CBP OFCR. NARCISO FERNANDEZ
Printed name and title

Sworn to before me and signed in my presence.

Date: _____

_____
Judge's signature

City and state: _____      HON. LURANA S. SNOW, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT

I, Narciso Fernandez, being duly sworn, hereby declare and state the following:

1. Your Affiant is employed as a United States Customs and Border Protection ("CBP") Enforcement Officer, and has been so employed since October, 2007. Prior to assuming that position, I was an Immigration Inspector with the United States Immigration and Naturalization Service ("INS") from May, 1998, to March, 2003, and a CBP Officer for INS from March, 2003, to October, 2008. I am currently assigned to the Miami International Airport, located in Miami, Florida, within the Southern District of Florida. My duties include investigating violations of the criminal statutes contained in the Immigration and Nationality Act, and related offenses contained in Titles 8 and 18 of the United States Code.

2. This Affidavit is submitted for the limited purpose of establishing probable cause in support of a complaint against Nivea ALTIDOR ("ALTIDOR"), for having knowingly and willfully made a materially false, fictitious, or fraudulent statement or representation in a matter within the jurisdiction of the Department of Homeland Security, an agency of the executive branch of the United States Government, in violation of Title 18, United States Code, Section 1001(a); for having knowingly made a false statement under oath in a matter relating to naturalization, citizenship, or registry of aliens, in violation of Title 18, United States Code, Section 1015(a); and, for knowingly applying for, and attempting to procure and obtain naturalization, citizenship, and evidence of naturalization for himself, to which he was not entitled, in violation of Title 18, United States Code Section 1425(b).

3. The statements contained in this Affidavit are based upon my own personal knowledge, as well as information provided by other individuals, including other law enforcement officials, and my review of records obtained during the course of this investigation.

I have not included in this Affidavit each and every fact and circumstance known to me, but only the facts and circumstances sufficient to establish probable cause.

4. On or about March 13, 2006, ALTIDOR, a citizen of Haiti, arrived at Miami International Airport aboard American Airlines flight number 822, from Port Au Prince, Haiti. Upon arrival, ALTIDOR proceeded to the primary inspection station and attempted to enter the United States as a visitor for pleasure under the alias "L.A.P." ALTIDOR presented an altered genuine Haitian passport with number XXXX447, and an altered genuine non-immigrant United States B2 visa with foil number XXXXX298, which bore ALTIDOR'S image but the name "L.A.P." Both documents also bore the same date of birth in January, 1980.

5. On or about March 13, 2006, at the primary inspection area located within Miami International Airport, a CBP officer reviewed the documents presented by ALTIDOR, and then proceeded to photograph and fingerprint ALTIDOR under the name of "L.A.P." ALTIDOR's fingerprints generated unique fingerprint identification number ("FIN") XXXXXXX627. At the time of inspection, ALTIDOR was not in possession of any genuine documents allowing him legal entry into the United States. ALTIDOR was then admitted as a B2 visitor into the United States under the identity of "L.A.P."

6. A records check revealed that L.A.P., the true owner of Haitian passport with number XXXX447 and United States visa with foil number XXXXX298, is an elderly gentleman and Haitian citizen with a date of birth in January, 1920. United States visa with foil number XXXXX298 was originally issued to L.A.P. on June 17, 2004, at Port Au Prince, Haiti, by the United States Department of State. A search of the State Department's database revealed a photograph of the true L.A.P., from the time of his visa application, that shows that L.A.P. is significantly older than ALTIDOR.

7. On or about October 27, 2006, ALTIDOR filed an I-589 application for asylum with United States Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security, under his true name of Nivea ALTIDOR, and his true date of birth in September, 1978. In the application for asylum, ALTIDOR claimed that his arrival to the United States occurred on April 21, 2006, in West Palm Beach, Florida.

8. On or about November 8, 2006, ALTIDOR was fingerprinted at USCIS in Fort Lauderdale, Florida, in connection with his I-589 asylum application. The fingerprints that ALTIDOR provided on this date, have been identified in the United States Visit System under FIN XXXXXXX627, as the same fingerprints that were provided on March 13, 2006, by ALTIDOR under the alias of "L.A.P.," at Miami International Airport primary inspection.

9. On or about November 28, 2006, ALTIDOR was fingerprinted at USCIS in Miami, Florida, again in connection with his I-589 asylum application. The fingerprints that ALTIDOR provided on this date have been identified in the United States Visit System under FIN XXXXXXX627, as the same fingerprints that were provided on March 13, 2006, by ALTIDOR under the alias of "L.A.P.," at Miami International Airport during primary inspection. ALTIDOR'S photograph was also taken during this encounter. ALTIDOR was subsequently granted asylee status on December 6, 2006.

10. On or about February 19, 2008, ALTIDOR filed an I-485 form with USCIS to become a lawful permanent resident. On his I-485 application, ALTIDOR stated that he had first arrived in the United States on April 20, 2006, in Lauderhill, Florida, when in fact he had arrived in the United States on March 13, 2006, at Miami International Airport, Miami, Florida under the alias of "L.A.P." with altered documents. In the same application, ALTIDOR also answered "no" to the question: "Are you under final order of civil penalty for violating section 274C of the

Immigration and Nationality Act for use of fraudulent documents or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the United States or any Immigration benefit?"

11.     On or about March 15, 2008, ALTIDOR was fingerprinted at USCIS in Fort Lauderdale, Florida, in regards to his I-485 application for Lawful Permanent Residency. The fingerprints that ALTIDOR provided on this date have been identified in the United States Visit System under FIN XXXXXXX627, as the same fingerprints that were provided on March 13, 2006, by ALTIDOR under the alias of "L.A.P.," at Miami International Airport during primary inspection.

12.     On or about February 26, 2009, ALTIDOR's I-485 application was approved by the Bureau of Citizenship and Immigration Services and ALTIDOR was accorded Lawful Permanent Resident status. ALTIDOR received an Alien Registration Receipt Card (I-551), containing alien number XXXXXX005.

13.     On or about May 22, 2014, ALTIDOR filed an N-400 application for naturalization with USCIS. In his N-400 application, ALTIDOR answered "no" to question number 30-I in part 11 of the application: "Have you ever made any misrepresentation to obtain any public benefit in the United States?" In addition, ALTIDOR also answered "no" to question number 31 in part 11: "Have you ever given any U.S. Government official(s) any information or documentation that was false, fraudulent, or misleading?" In addition, he also answered "no" to question number 32 in part 11: "Have you ever lied to any U.S. Government official to gain entry or admission into the United States or to gain immigration benefits while in the United States?" ALTIDOR answered "no" to these three questions despite the fact that he presented fraudulent documents to enter the United States under the alias of "L.A.P." on March 13, 2006,

and then continued to make misrepresentations on subsequent immigration benefit applications, including but not limited to, his I-485 application for Lawful Permanent Residency and N-400 application for Naturalization.

14. On or about June 23, 2014, ALTIDOR was fingerprinted at USCIS in Fort Lauderdale, Florida, in regards to his N-400 application for Naturalization. The fingerprints that ALTIDOR provided on this date have been identified in the United States Visit System under FIN XXXXXXX627 as the same fingerprints that were provided on March 13, 2006, by ALTIDOR under the alias of "L.A.P.," at Miami International Airport during passport primary inspection. ALTIDOR'S photograph was also taken during this encounter.

15. On or about November 3, 2014, ALTIDOR was interviewed by a USCIS officer with the Department of Homeland Security and reaffirmed that the answers that he provided on his N-400 application for Naturalization were true and correct.

16. The fingerprints that were provided during ALTIDOR'S initial entry into the United States on March 13, 2006 under the alias of "L.A.P.," were compared to the fingerprints that ALTIDOR provided during his various aforementioned applications for immigration benefits. A fingerprint analyst of the Miami Dade Police Department has concluded that all such provided fingerprints were made by the same individual.

17. Based on the foregoing facts, I submit that probable exists to believe that Nivea ALTIDOR did knowingly and willfully make a materially false, fictitious, or fraudulent statement or representation in a matter within the jurisdiction of the Department of Homeland Security, an agency of the executive branch of the United States Government, in violation of Title 18, United States Code, Section 1001(a)(2); did knowingly make a false statement under oath in a matter relating to naturalization, citizenship, or registry of aliens, in violation of Title

ALTIDOR

18, United States Code, Section 1015(a); and, for knowingly applying for, and attempting to procure and obtain naturalization, citizenship, and evidence of naturalization for himself, to which he was not entitled, in violation of Title 18, United States Code 1425(b).

FURTHER AFFIANT SAYETH NAUGHT

*[signature]*
Narciso Fernandez
Enforcement Officer
U.S. Customs and Border Protection

Sworn to and subscribed before me,
this 27 day of Feb, 2017,
in Ft Laud, Florida.

*[signature]*
HON. LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

18, United States Code, Section 1015(a); and, for knowingly applying for, and attempting to procure and obtain naturalization, citizenship, and evidence of naturalization for himself, to which he was not entitled, in violation of Title 18, United States Code 1425(b).

                    FURTHER AFFIANT SAYETH NAUGHT

                    Narciso Fernandez
                    Enforcement Officer
                    U.S. Customs and Border Protection

Sworn to and subscribed before me,
this _____ day of _____, 2017,
in _____, Florida.

_____
HON. LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-6075- SNOW

UNITED STATES OF AMERICA

vs.

NIVEA ALTIDOR,

_____/

Defendant.

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes   __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
Jessica Kahn Obenauf
Assistant United States Attorney
Florida Bar No. 0052716
99 Northeast 4th Street
Miami, FL. 33132-2111
Tel: (305) 961-9317
Fax: (305) 530-7976
Jessica.obenauf@usdoj.gov